### WILLIAMS v. THOMSON.
### No. 10522.

Court of Civil Appeals of Texas. Galveston.

Jan. 6, 1938.

Rehearing Denied Jan. 27, 1938.

Vinson, Elkins, Weems & Francis, C. M. Hightower, and Donley C. Wertz, all of Houston, for appellant.

Lipscomb & Lipscomb, of Beaumont, for appellee.

CODY, Justice.

This suit is by appellant against appellee for damages for the breach of an alleged contract for the sale of a royalty interest in land belonging to appellee located in Chambers county. The case was tried to the court who rendered judgment in favor of appellee that appellant take nothing. Conclusions of fact and law were filed.

Appellee lives in Louisiana and never met appellant until sometime about, or after, the middle of August, 1935. All communications between them, therefore, were written, except as hereafter indicated.

W. W. Gregory, who lives in Chambers county, looked after the payment of taxes on appellee's land, and performed other services for him in connection with it. Through Gregory appellant approached appellee with a proposal to buy a one-fourth of one-eighth royalty interest on sixty acres. Gregory signed the following letter, dated July 11, 1935, which was written or dictated for him to sign by one Powell, an employee of appellant, and duly transmitted to appellee:

"Enclosed find Royalty Contract or Deed for 1/32nd of minerals on your 60.2 acres in T. & N. O. Survey 67, Chambers County, Texas, at base of $35.00 an acre, or $8.75 an acre for the 1/32nd you by this deed convey; and for which draft in the sum of $526.75 is attached.

"After filling out deed in all blank spaces have same acknowledged both as to your wife's full name and your own; then send both deed and draft to National Bank of Commerce, Houston, Texas, with instructions to that bank to permit examination of the deed, and then within ten days if your title is found to be acceptable, the bank shall send you $526.75; and you can then at your reasonable pleasure send me my fee.

"In just talking with you on the phone the computation was made by buyers on basis of 160 acres (which was just purchased at same base price as you are receiving) and on land immediately west of yours."

Thereafter, on July 13, 1935, appellee wrote the following letter to the National Bank of Commerce at Houston:

"Gentlemen: Enclosed herewith Royalty Contract or Deed with Ten day draft in the amount of $526.75 drawn on you, care of G. D. Williams, 1312 Esperson Building, and signed by C. H. Powell.

"You may let Mr. Williams inspect this deed and upon payment of the draft surrender same to him, remitting the net amount to me at Labadieville, Louisiana, in New Orleans exchange."

The royalty deed referred to was in form of a general warranty deed from appellee and wife to appellant, for a recited $10 consideration, and except that the blank form references to the covering lease, and its owner, and to certain other particulars, were not filled in.

Attached to the deed sent in the letter to the National Bank of Commerce was the following draft:

"First National Bank in Houston No. —
"Houston, Texas, July 13, 1935.
"Ten days subject to examination title after receipt of abstract open
"Pay to the order of B. C. Thompson $526.-75 Five Hundred and Twenty Six Dollar and Seventy Five Cents Dollars
"Customer's Draft
"To National Bank of Commerce, Houston, Texas
"%G. D. Williams        C. H. Powell
"1312 Esperson bldg."

Endorsed: "For collection and returns to B. C. Thomson."

The answer of the bank to appellee was as follows:

"Mail to Thomson Machinery Co Labadieville La
"Received 7 16 35 Your Date
7 13 35 Your Number.....Amount
Description Draft Payer G
  D Williams                526.75
Due 10 Days Sight Int. Rate
  ..From..Protest........B/L Pasatt"

On July 21, 1935, Gregory phoned appellee that an abstract of title had been located, and requested that appellee instruct the bank to extend time for its examination; in response to which representation appellee sent the bank the following telegram: "You are holding ten day draft on G. D. Williams, Please extend same to permit of examination of title."

Thereafter, on July 29, 1935, appellee instructed the bank to return him his papers, which was done.

No demand was ever made on appellee to furnish any abstract of title for examination; and indeed he never possessed one, which fact seemed to be known to appellant. The time the deed with draft attached was held by the bank was one of violent fluctuations in values in and near the field then newly opened near Anahuac, near which appellee's property lies.

Appellant contends that the uncontradicted proof shows that Gregory was the agent of appellee, and that through Gregory he accepted the offer made by Powell, the agent of appellant, by sending the deed with draft attached to the bank in Houston, with a letter of instructions; that the result of his so doing was to create an executed contract of sale, subject only to the stipulation contained in the draft that the draft was to be paid ten days after receipt of abstract of title.

Appellant's contention cannot be sustained. There seems to be no evidence that would have sustained a finding that Gregory was appellee's agent to do more than transmit to him offers to buy his oil rights. Certainly the trial court's finding that this was true is amply supported. In form, as well as in substance, the deposit of the deed with draft attached with the bank under appellee's accompanying instructions to it was nothing more than an offer on the part of appellee to deliver the deed to appellant for cash in the amount of the draft, so long as appellee allowed it to remain there. The bank, under the instructions it received from appellee, and which it was bound to obey, was merely the agent of appellee to collect the draft and deliver the deed. The only right that appellant had was the option (and for this he paid no consideration, and appellee could have withdrawn it at any time) to take up the deed at any time by paying the draft. Had ap-

pellee furnished appellant an abstract showing a good and merchantable title of record, he could not have recovered judgment from appellant for the sum named in the draft, for appellant never bound himself to take the property. Certainly there is nothing on the face of the draft to suggest that appellant was obligated to buy the royalty interest, however good the title might be. It does contemplate that appellant should have an opportunity to examine the title; but this, for the purpose of enabling him to exercise his option. Appellee did not obligate himself to furnish an abstract, and the court found that the parties understood that appellee was not to furnish an abstract and appellant never requested one from him, and in fact obtained an extension of time on July 22, as above stated, that an abstract of title might be examined, which it was represented to appellee had been procured.

We do not discuss the authorities cited by appellant relating to rights of parties in cases of escrow. They are doubtless right, but not applicable here. The fact findings of the court support the judgment, and such findings are amply supported by the evidence.

Judgment is therefore affirmed.

Affirmed.

PLEASANTS, C. J., absent.

### On Motion for Rehearing.

CODY, Justice.

We seem not to have made clear our meaning to appellant in our original opinion. The bank was not constituted a stakeholder or escrow agent. The trial court found, and we hold, that the bank came into possession of the conveyance and draft attached under the letter of appellee. This letter of instructions from appellee to the bank, transmitting the conveyance with draft attached, was a counter offer, for the instructions it contained cannot be ignored. The bank was by such letter constituted nothing more than the servant of appellee to deliver the conveyance for cash. The letter to the bank did not, of course, exhaust the power of appellee to issue any further orders to the bank, so long as the bank had not delivered the conveyance pursuant to appellee's instructions. The bank was obviously without authority to refuse to re-

turn the conveyance to appellee upon receiving instructions to do so; and did so.

Motion for rehearing is refused.

Refused.

PLEASANTS, C. J., absent.